In re Petition for DISCIPLINARY ACTION AGAINST Harry N. RAY, an Attorney at Law of the State of Minnesota.

No. CX–81–1120.

Supreme Court of Minnesota.

May 25, 2000.

Harry N. Ray, Bloomington, pro se.

Edward J. Cleary, Director, Martin A. Cole, Senior Asst. Director, St. Paul, for Office of Lawyers Prof. Resp.

## OPINION

### PER CURIAM.

Respondent Harry N. Ray is currently suspended from the practice of law after being twice disciplined by this court. *See In re Ray,* 452 N.W.2d 689 (Minn.1990) (*In re Ray II*); *In re Ray,* 368 N.W.2d 924 (Minn.1985) (*In re Ray I*). The Director of the Office of Lawyers Professional Responsibility has filed a new petition for disciplinary action against Ray and a supplemental petition, alleging that Ray has continued to engage in the practice of law while under suspension. A referee appointed by this court recommends disbarment. We agree with that recommendation and order disbarment.

Harry N. Ray was admitted to the practice of law in 1953. In 1981, following an investigation by the Director, a referee found that Ray had mismanaged his client trust account. *See In re Ray I,* 368 N.W.2d at 926. While the referee recommended a 5–year suspension and the Director recommended disbarment, we ordered a 3–year suspension. *See id.* at 926-27. When imposing this sanction, we considered numerous mitigating factors including Ray's history of charitable work, evidence of his good character, and the fact that no client had suffered any direct loss. *See id.* at 927.

The Director subsequently filed a second petition for disciplinary action against Ray, alleging that Ray had engaged in the practice of law while under suspension. *See In re Ray II,* 452 N.W.2d at 692. At the culmination of the ensuing disciplinary proceeding, we held that Ray had engaged in the unauthorized practice of law when he negotiated a settlement on behalf of a client and made two attempts to negotiate a settlement with another client's automobile insurer. *See id.* at 693. The referee appointed by our court in that matter recommended that Ray be allowed to resign as an attorney and agree to never apply for readmission or to work for another attorney or law firm. *See id.* at 694. In the alternative, the referee recommended disbarment. *See id.* The Director asked the court to adopt the referee's findings and conclusions and disbar Ray. In determining the appropriate sanction, we again considered mitigating factors and ordered that Ray's suspension be extended until January 1, 1991. *See id.* Ray could have petitioned for reinstatement after January 1, 1991, but he has never done so and

continues to be suspended from the practice of law.

In the disciplinary action presently before us, the Director filed a petition for disciplinary action alleging that Ray continued to engage in the practice of law while under suspension. The Director also filed a supplementary petition alleging additional conduct that involved the unauthorized practice of law and other rule violations. We referred those charges to a referee, who held a disciplinary hearing. The referee's relevant findings of fact are summarized as follows.

*Chickett Matter*

In 1991, Ray drafted a family trust agreement for Lucy Chickett and her late husband. Then, in 1995, Ray assisted Chickett in bringing an automobile accident claim by writing a letter to a doctor that stated: "We are assisting and representing Lucy Chickett in her claim for injuries she sustained in [an] automobile accident * * *." Ray sought a report from the doctor for use in reaching a settlement with the insurance company. In his response, the doctor addressed Ray as "Harry N. Ray, Attorney at Law," and Ray did not correct the doctor's misunderstanding of his status. Ray then referred Chickett's case to an attorney who negotiated with the insurer while Ray continued to work with Chickett. That attorney eventually settled the case and charged Chickett one-third of the settlement proceeds, one-third of which he, in turn, paid to Ray.

In November 1998, Chickett requested her file from Ray. Ray did not respond to that request. In April 1999, Chickett's nieces, acting on her behalf under a power of attorney that Ray drafted while under suspension, again requested Chickett's file by writing Ray a letter and asking that he send Chickett's file to her attorney. Ray did not immediately respond. At the disciplinary hearing in this matter, Ray stated that he did not respond to Chickett's written request because she subsequently told him that she did not want the file. In his answer to the Director's supplementary petition, Ray further stated that he did not immediately respond to Chickett's nieces following the second request because he repeatedly attempted to call Chickett's attorney to tell him that he only had tax returns for Chickett, but could not reach him. When Ray finally reached the attorney, Ray delivered Chickett's file.

In June 1999, the Director sent a Notice of Investigation to Ray regarding the Chickett matter and requested a response. Ray did not respond to that letter or to a subsequent identical request.

*Baize and Bartelmy Matters*

In 1998, Ray assisted Robinson Baize and Thomas Bartelmy with paternity action hearings in Hennepin County District Court. Although Ray did not expressly identify himself as an attorney at the hearings, the court's orders reflect that Baize appeared with his counsel, Harry Ray, and that Harry Ray appeared for Bartelmy. Ray did nothing to correct this error in the record. Further, while the paternity actions were pending, the Hennepin County Attorney's Office corresponded with Ray as Baize's attorney and served Baize's motion papers with a letter addressed to "Mr. Harry Ray, Attorney at Law." Ray acknowledged receipt of the motion papers, but did not communicate that he was suspended from the practice of law. Further, Ray met with an assistant county attorney to discuss the Baize and Bartelmy matters and negotiated for a stipulation. Ray told Baize that he was retired from the practice of law, but not that he was suspended.

*Referee's Findings*

Following the disciplinary hearing, the referee concluded that Ray engaged in the unauthorized practice of law in violation of Minnesota Rules of Professional Conduct (MRPC) 5.5(a) and 8.4(d) (prohibiting an attorney from practicing law in violation of a jurisdiction's professional regulations and engaging in conduct that is prejudicial to the administration of justice). The referee based this conclusion on his findings

that Ray indirectly assisted in Chickett's representation in a personal injury matter, drafted a power of attorney agreement for Chickett, appeared in court for Baize and Bartelmy, and directly negotiated with the county attorney on their behalf. Further, the referee concluded that Ray's failure to surrender documents to Chickett or her nieces within a reasonable time after their requests violated Rule 1.16(d), MRPC (requiring an attorney to take steps to the extent reasonably practicable to protect a client's interests after termination of representation). The referee also concluded that Ray's failure to comply with the Director's request for information constituted noncooperation in violation of Rule 8.1(a)(3), MRPC (prohibiting an attorney from knowingly failing to respond to a discipline authority's legally authorized request for information), and Rule 25, Minnesota Rules on Lawyers Professional Responsibility (RLPR) (requiring cooperation with the Director's reasonable investigative requests). Finally, the referee found that Ray did not admit that his conduct was wrong and would likely engage in similar conduct in the future. Based on these findings and conclusions, the referee recommended disbarment. The Director agrees with this recommendation.

At the disciplinary hearing before the referee, Ray disputed all allegations that he had acted improperly. We note that while Ray ordered a transcript of the hearing, he did not file a brief with this court. Having failed to do so, he appeared for oral arguments and again argued that his conduct had not been improper.

■ The Director has the burden of proof in disciplinary proceedings and must meet a clear and convincing evidence standard. *See In re Miera,* 426 N.W.2d 850, 853 (Minn.1988); *In re Witherow,* 226 Minn. 58, 60, 32 N.W.2d 176, 177 (1948). We generally afford great weight to a referee's findings of fact and conclusions of law. *See In re Schmidt,* 402 N.W.2d 544, 545 (Minn.1987). Because Ray has or-

dered a transcript, the referee's findings, conclusions and recommendation are at issue pursuant to Rule 14(e), RLPR. Additionally, while we generally afford great weight to the referee's recommendation for discipline of an attorney, we alone bear the final responsibility to determine what discipline is appropriate. *See In re Klein,* 442 N.W.2d 317, 321 (Minn.1989).

■ The Director asserts, and Ray denies, that Ray engaged in the unauthorized practice of law. We discussed the issue of a suspended attorney engaging in the unauthorized practice of law in *In re Jorissen,* 391 N.W.2d 822, 825 (Minn.1986). There we stated that a *nonattorney* engages in the unauthorized practice of law when he "acts in a representative capacity in protecting, enforcing, or defending the legal rights of another, and advises and counsels that person in connection with those rights * * *." *Id.* In comparison, we stated that a *suspended* attorney

> may engage in some [legal-related] activities if he is otherwise qualified to do so, but not if his qualifications come from having been a lawyer. * * * When professional expertise enters into the activity, and when the activity is one which is customarily performed by lawyers, then such activity is forbidden to a suspended attorney, even though under some conditions members of other professions may sometimes be allowed to perform the same acts.

*Id.* (quoting *In re Christianson,* 215 N.W.2d 920, 925–26 (N.D.1974)).

In *Jorissen,* we held that the attorney engaged in the unauthorized practice of law while suspended when he appeared on behalf of a client in a criminal proceeding, appeared at a pretrial hearing, appeared on behalf of a client at an administrative tribunal, stipulated to a restraining order, and negotiated and counseled a client in working out a marital stipulation. *See id.* We further held that such conduct warranted disbarment. *See id.* at 826.

Ray does not dispute the relevant facts discussed above with regard to his conduct in the Chickett, Baize, and Bartelmy matters. At both the disciplinary proceeding and at oral argument before this court, Ray argued that his conduct did not constitute the practice of law. Instead, he asserted that he acted like a father to Baize and like a friend to Chickett and Bartelmy. However, at the disciplinary hearing, Ray specifically acknowledged that he accompanied Baize to court because of his legal expertise and that, relying on that expertise, he advised Baize on his legal rights and negotiated with the county attorney. Ray also acknowledged that he did not correct the county attorney's impression that he was acting as an attorney. Instead, at the disciplinary hearing, he testified, "I am an attorney at law. I am to this day, as I understand it, an attorney of [sic] law under suspension by the Board of Professional Responsibility. I cannot deny I am an attorney at law." Further, Ray specifically admitted that he prepared a trust agreement and a power of attorney for Chickett and that he advocated on her behalf. Thus, we conclude that the record supports the referee's conclusion that Ray engaged in the practice of law while suspended in violation of Rules 5.5(a) and 8.4(d), MRPC.

■ The referee also concluded that Ray failed to timely surrender a client file and failed to fully cooperate with the Director's investigation. At the disciplinary hearing, Ray acknowledged that he did not respond to Chickett's request for her file, although he stated that this was because Chickett had subsequently requested that he not do so. Further, while Ray stated that he complied with the later request by Chickett's nieces to deliver her file, the record indicates that he did not do so within a reasonable time. Ray also acknowledged that he did not respond to either of the Director's two requests for information regarding the Chickett matter. Therefore, we conclude that the record supports the referee's conclusion that Ray failed to surrender client documents within a reasonable time and that Ray failed to cooperate fully with the Director's investigation in violation of Rules 1.16(d) and 8.1(a)(3), MRPC, and Rule 25, RLPR.

■ Having determined that Ray engaged in the unauthorized practice of law while under suspension, failed to timely surrender client documents upon request, and failed to cooperate fully with the Director's investigation, we next address what discipline is warranted by this misconduct. As previously noted, both the referee and the Director recommend disbarment.

■ The purpose of attorney discipline is not to punish the attorney; rather, it is to protect the courts, the public, and the legal profession, and to guard the administration of justice. *See In re Bishop,* 582 N.W.2d 261, 263 (Minn.1998) (quoting *In re Madsen,* 426 N.W.2d 434, 435 (Minn. 1988)). In determining what discipline is appropriate, this court considers: (1) the nature of the misconduct, (2) the cumulative weight of the rule violations, (3) the harm to the public, and (4) the harm to the legal profession. *See In re Madsen,* 426 N.W.2d at 436. Any mitigating or aggravating circumstances also will be taken into consideration. *See In re Haugen,* 543 N.W.2d 372, 375 (Minn.1996). For guidance in determining the appropriate discipline, we may turn to cases involving similar misconduct. *See In re Madsen,* 426 N.W.2d at 436.

We have previously applied severe discipline for the unauthorized practice of law after suspension when suspension was for disciplinary violations rather than for failing to pay attorney registration fees. *See In re Jorissen,* 391 N.W.2d at 826; *see also In re Hunter,* 473 N.W.2d 866, 869 (Minn.1991) (disbarring an attorney who continued to practice law during a 6-month suspension for neglect of client matters, noncommunication, failure to return documents, wrongful withdrawal of funds, and noncooperation with the Director's in-

vestigation). In *Ray II*, we declined to disbar Ray for the unauthorized practice of law despite the referee's and Director's recommendations that we do so. 452 N.W.2d at 694. Instead, we concluded that Ray's misconduct was distinguishable from that in *Jorissen* because there the attorney had committed "more blatant unauthorized conduct." *In re Ray II*, 452 N.W.2d at 694. While we noted that Ray's previous misconduct was an aggravating factor, we considered the following mitigating factors: "no harm to clients, respondent's civic and pro bono activities, and his commitment to future good ethics." *Id.* We also noted that Ray had apparently cooperated fully with the Director's investigation. *See id.*

█ The mitigating factors present in *Ray II* are not present here. Specifically, we note that Ray did not cooperate fully with the Director's requests for information. Additionally, Ray's current misconduct is aggravated by his prior discipline. We have previously disciplined him for unauthorized practice of law while suspended, yet rather than reforming his conduct, he has repeated it. Further, Ray does not acknowledge that he has committed any misconduct, and it appears that unless appropriately sanctioned, he is likely to engage in similar conduct in the future. Therefore, in order to protect the courts, the public, and the legal profession and to guard the administration of justice, we order that respondent Harry N. Ray be disbarred.

Disbarment ordered.

GILBERT, J., took no part in the consideration or decision of this case.