In re **PETITION FOR DISCIPLINARY ACTION AGAINST Richard G. DAY, a Minnesota Attorney, Registration No. 21659.**

No. A04–1046.

Supreme Court of Minnesota.

March 23, 2006.

## OPINION

PER CURIAM.

The Director of the Office of Lawyers Professional Responsibility filed a petition for disciplinary action against respondent Richard G. Day on January 23, 2004, alleging three counts of misconduct, including misappropriation of client funds, practicing law while suspended, failure to notify clients of his suspension, failure to return client files, and failure to participate in the disciplinary process. Despite efforts to locate Day, the director has been unable to personally serve the petition. In response to a petition from the director,[1] we prohibited Day on July 12, 2004, from applying for reinstatement while the disciplinary action remained pending and gave him one year to move for leave to answer the petition.[2] When Day did not so move, we issued an order on September 21, 2005, deeming the allegations admitted,[3] ordered the director to serve Day by publication,[4] and set the matter on for hearing to show cause as to why we should not impose the appropriate discipline. Day neither responded nor appeared. We agree with the director's assertion that the facts and circumstances of this case merit disbarment.

1. The director petitioned under Rule 12(c)(1), Rules on Lawyers Professional Responsibility (RLPR), which states in relevant part:

   If the respondent cannot be found in the state, the Director shall mail a copy of the petition to the respondent's last known address and file an affidavit of mailing with this Court. Thereafter the Director may apply to this Court for an order suspending the respondent from the practice of law. * * * Within one year after the order is filed, the respondent may move this Court for a vacation of the order of suspension and for leave to answer the petition for disciplinary action.

2. Day was not suspended, as provided for by Rule 12(c)(1), RLPR, because he remained indefinitely suspended as a result of our order of October 1, 2001. *In re Day*, 634 N.W.2d 173 (Minn.2001).

3. Rule 13(b), RLPR, states, "If the respondent fails to file an answer within the time provided or any extension of time this Court may grant, the allegations shall be deemed admitted and this Court may proceed under Rule 15." *See also In re Crandall*, 699 N.W.2d 769, 770 (Minn.2005). Rule 15(a), RLPR, describes the dispositional options available to this court, including disbarment.

4. Rule 12(c)(2), RLPR, states in relevant part that an order to show cause

   may be served on the respondent by publishing it once each week for three weeks in the regular issue of a qualified newspaper published in the county in this state in which the respondent was last known to practice or reside. * * * If the respondent fails to respond to the order to show cause, this Court may proceed under Rule 15.

   In October 2005, the director published the order to show cause in both Hennepin County and Pinellas County, Florida (in which Largo is located; Day had given the director a Largo address at one point during the investigation).

Day was admitted to the practice of law in Minnesota in 1974. He was suspended in July 2000 for 90 days for practicing law while suspended for nonpayment of his attorney registration fee and on CLE restricted status, failing to return a client's file, failing to diligently pursue claims on behalf of two clients and misrepresenting the status of the matter to one of the clients, and failing to cooperate in the disciplinary proceedings. *In re Day,* 615 N.W.2d 275, 276 (Minn.2000) *(Day I ).* Day admitted that his conduct violated the Rules of Professional Conduct and entered into a stipulation with the director that recommended a 90–day suspension with reinstatement conditioned on a number of terms, including notification to his clients of his suspended status. *Id.*

Day was indefinitely suspended in October 2001 for practicing law after suspension, failing to return client property, and failing to cooperate with the associated disciplinary proceeding. *In re Day,* 634 N.W.2d 173 (Minn.2001) *(Day II ).* Day again entered into a stipulation with the director, recommending an indefinite suspension with reinstatement conditioned on a number of terms, again including notification to his clients that he had been suspended. *Id.* at 173–74.

Day has not applied for reinstatement since he was indefinitely suspended.[5]

The allegations in the current petition, now deemed admitted, are described under three counts of misconduct.

*Geer matter*

In December 2002, while suspended from the practice of law, Day met with Gregory Geer regarding representation of Geer in a workers' compensation matter. Geer gave Day documents related to the matter and $100 cash as a retainer. Day did not tell Geer that he was suspended and could not represent him. Subsequent to the meeting, Geer tried to contact Day by phone approximately 12 times, then opted to retain different counsel. Day never returned the $100 or the documents. A complaint was filed with the director in the Geer matter in March 2003.

The director asserts that Day's conduct in the Geer matter represents a violation of the state law prohibiting unauthorized practice of law, Minn.Stat. § 481.02 (2004). In addition, the director argues that Day's conduct violated the Minnesota Rules of Professional Conduct requiring a lawyer to keep his clients reasonably well informed,[6] mandating transfer of client documents when representation is terminated,[7] and prohibiting the unauthorized practice of law.[8] The director further alleges that Day committed misconduct by committing a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness; engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation; and engaging in conduct that is prejudicial to the administration of justice.[9]

---

5. In addition to the past disciplinary action we have taken against him, Day was admonished in 1991 for use of an advertisement falsely implying that lawyers in his firm were specialists when they were not at the time certified as specialists. In 1999 Day was admonished for failure to pay professionally incurred indebtedness.

6. Minn. R. Prof. Conduct 1.4, 14 Minn.Stat. 1386 (2004) (amended June 17, 2005, eff. Oct. 1, 2005).

7. Minn. R. Prof. Conduct 1.16(d), 14 Minn. Stat. 1408 (2004) (amended June 17, 2005, eff. Oct. 1, 2005).

8. Minn. R. Prof. Conduct 5.5, 14 Minn.Stat. 1424 (2004) (amended June 17, 2005, eff. Oct. 1, 2005).

9. Minn. R. Prof. Conduct 8.4(b), (c), & (d), 14 Minn.Stat. 1434 (2004) (amended June 17, 2005, eff. Oct. 1, 2005).

*Taylor matter*

At the time of his suspension in July 2000, Day was representing Gloria Reese–Taylor and Clarence Taylor in a matter involving a Minneapolis neighborhood redevelopment organization. Day did not inform the Taylors that he had been suspended and did not encourage the Taylors to find another lawyer as required by our October 2001 suspension order. The Taylors paid Day $200 in May 2002 and another $200 in July 2002. Day neglected to return phone calls from the Taylors in the fall of 2002, and their letter seeking a status report sent by certified mail in December 2002 was refused by him. Day did not refund the $400 the Taylors paid him and did not return their client file.

The director asserts Day's acceptance of fees from the Taylors for legal services when he was suspended constitutes a violation of the law prohibiting the unauthorized practice of law. Minn.Stat. § 481.02. Further, the director argues that Day's conduct in the Taylor matter violated all of the same Minnesota Rules of Professional Conduct that he allegedly violated in the Geer matter, as well as Rule 26(a), RLPR, requiring a lawyer to notify his clients when he is suspended.

*Noncooperation*

Day did not respond to a notice of investigation or a followup letter sent by the director regarding the Geer complaint to the address listed for Day with Minnesota attorney registration. Both letters were returned undeliverable. The director's staff subsequently contacted Day via a cell phone number provided by the complainant in the Taylor matter. In response, Day supplied a Largo, Florida, address.

Notices of investigation regarding the Geer and Taylor matters were sent on May 22, 2003, to the Florida address, requesting written responses within 14 days. Day did not respond, nor did he respond to a followup letter sent July 23, 2003, to the Florida address.

The director served charges of unprofessional conduct and notice of a prehearing meeting by U.S. mail to Day's Florida address on November 20, 2003; the documents were returned to the director marked "return to sender: attempted not known." The director's office added "north" to the street name in Day's address and re-sent the materials with a cover note asking Day to call the director's office upon receipt. At the same time, the director's office left a phone message for Day, notifying him of the date and time of the prehearing meeting that had been scheduled for December 10, 2003. Day did not respond, nor did he attend the prehearing meeting or attempt to reschedule it.

The director moved for approval to file a petition for disciplinary action under Rule 10(d), RLPR, based on flagrant noncooperation.[10] On January 23, 2004, the chair of the Lawyers Board Panel approved the filing of the petition for disciplinary action. Copies of the notice of Rule 10(d) motion and motion, along with the petition mailed to Day's Florida address, were returned undeliverable. When contacted by the director's office to obtain a forwarding address for Day, the Florida post office indicated that Day had "moved, left no forwarding address."

---

**10.** Rule 10(d), RLPR states, in relevant part:
In matters in which there are an attorney's admissions, civil findings, or apparently clear and convincing documentary evidence of an offense of a type for which the Court has suspended or disbarred lawyers in the past * * * the Director may * * * upon a motion made with notice to the attorney and approved by the Panel Chair, file the petition under Rule 12.
Rule 12, RLPR, governs petitions for disciplinary action.

The director argues that Day's noncooperation in the investigations in the Geer and Taylor matters constitutes misconduct involving dishonesty, fraud, deceit, or misrepresentation.[11] He also argues that it represents violations of the rules requiring lawyers to provide information as requested and participate in such investigations.[12]

The purposes of visiting disciplinary sanctions on attorneys found to have committed misconduct are to protect the public, to protect the judicial system, and to deter future misconduct. *In re Oberhauser*, 679 N.W.2d 153, 159 (Minn. 2004). Factors we consider in determining the appropriate sanction to impose include the nature of the misconduct, the cumulative weight of violations of the rules of professional conduct, the harm to the public, and the harm to the legal profession. *Oberhauser*, 679 N.W.2d at 159.

We look to similar cases of misconduct for guidance as to the discipline to impose. *In re Brooks*, 696 N.W.2d 84, 88 (Minn.2005). But discipline is imposed case-by-case after consideration of both aggravating and mitigating circumstances. *Oberhauser*, 679 N.W.2d at 159 (citing *In re Koss*, 611 N.W.2d 14, 16 (Minn.2000)).

We have noted that we are "particularly concerned when [an] attorney misappropri-ates client funds and will often disbar an attorney for misappropriation unless the attorney presents clear and convincing evidence of substantial mitigating circumstances showing that the attorney did not intentionally convert the funds." *Brooks*, 696 N.W.2d at 88. We also have stated that "[m]isappropriation occurs whenever funds belonging to a client are not deposited in a trust account and are used for any purpose other than that specified by the client." *In re Westby*, 639 N.W.2d 358, 370 (Minn.2002). Under the admitted facts, Day took $400 from the Taylors and $100 from Geer, but provided no services in these matters. While the misappropriation of such a relatively small amount may or may not merit disbarment on its own, Day's other misconduct makes such an analysis unnecessary. *In re Grzybek*, 567 N.W.2d 259, 264 (Minn.1997). We disbarred Grzybek for misconduct similar in degree to Day's. Grzybek, like Day, misappropriated a small amount of money, but also, like Day, neglected client matters, neglected to inform clients that he had been suspended, failed to return client files, and failed to cooperate with disciplinary proceedings. *Id.* at 264–65.

We have imposed discipline on Day before for each of the other forms of mis-

---

**11.** Minn. R. Prof. Conduct 8.4(d), 14 Minn. Stat. 1434 (amended June 17, 2005, eff. Oct. 1, 2005).

**12.** Minn. R. Prof. Conduct 8.1(a)(3), as it read at the time, stated in relevant part:

[A] lawyer in connection with * * * a disciplinary matter, shall not:
* * * *

(3) knowingly fail to respond to an admissions or discipline authority's lawfully authorized demand for information by either providing the information sought or making a good faith challenge to the demand.

Minn. R. Prof. Conduct 8.1(a)(3), 14 Minn. Stat. 1432 (2004) (amended June 17, 2005, eff. Oct. 1, 2005). Rule 25, RLPR, as it read at the time, stated in relevant part:

(a) Lawyer's duty. It shall be the duty of any lawyer who is the subject of an investigation or proceeding under these Rules to cooperate with the District Committee, the Director, the Director's staff, the Board, or a Panel, by complying with reasonable requests, including requests to:

(1) Furnish designated papers, documents or tangible objects;

(2) Furnish in writing a full and complete explanation covering the matter under consideration;

(3) Appear for conferences and hearings at the times and places designated.

Rule 25, RLPR, 14 Minn.Stat. 1462 (2004) (amended Aug. 10, 2005, eff. Sept. 1, 2005).

conduct deemed admitted in the current matter. *See Day I*, 615 N.W.2d at 276 (imposing a 90–day suspension for practicing while fee-suspended, failing to return a client file, and failing to cooperate with the disciplinary proceedings); *Day II*, 634 N.W.2d at 173 (ordering indefinite suspension for practicing law while suspended, failing to return client property, and failing to cooperate in the disciplinary proceedings). Of the repeated misconduct, practicing while suspended for disciplinary reasons (as opposed to administrative reasons) specifically merits disbarment. *See Westby*, 639 N.W.2d at 371; *In re Ray*, 610 N.W.2d 342, 346 (Minn.2000). Like Day, Westby practiced law while suspended for disciplinary reasons (and also misappropriated client funds, failed to communicate with a client, and failed to respond to requests for information from the director's office). *Westby*, 639 N.W.2d at 363–66. Westby was disbarred. *Id.* at 371. And we disbarred Ray after he repeatedly engaged in the practice of law while under suspension, failed to timely surrender documents upon request, failed to cooperate fully with the disciplinary investigation, and presented no mitigating factors. *Ray*, 610 N.W.2d at 346–47. Day was initially suspended for administrative reasons (failure to complete CLE requirements and failure to pay his attorney fees) but was then suspended for practicing law during the initial suspension period—a disciplinary suspension. *Day II*, 634 N.W.2d at 173. The current petition cites further instances of practice while still suspended.

Finally, we have held that "[f]ailure to cooperate with the disciplinary process constitutes separate misconduct warranting discipline independent from the conduct underlying the petition." *Brooks*, 696

N.W.2d at 88. In contrast with the proffered stipulated resolutions in the first two disciplinary matters that brought Day before us, Day has failed to respond at any stage of the current proceeding. Such nonresponsiveness, in addition to being a violation of professional responsibility rules on its own, means that we have no information on factors that might mitigate the misconduct Day has perpetrated. What is more, we have held that disbarment is appropriate for an attorney who, like Day, cannot be found and who fails to move for vacation of a suspension or leave to answer a petition for disciplinary action. *In re Keller*, 656 N.W.2d 398, 402 (Minn. 2003).[13]

Day has demonstrated a disregard for the ethical practice of law by failing to comply with the orders of this court, repeatedly engaging in the unauthorized practice of law, and failing to cooperate with the investigation of the director's office. We order that respondent Day be disbarred.

GILDEA, J., not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.

---

**13.** *Keller* was a reciprocal discipline case; Keller already had been disbarred in North Dakota when we imposed disciplinary sanctions in Minnesota. 656 N.W.2d at 400–02.